Or argument not to exceed 15 minutes to be shared by appellant and amicus. 15 minutes for the appellant. Michael Grapehorn for the appellant. Again, may it please the court, I'm Michael Grapehorn. I represent the plaintiff appellant, in this matter Roger L Smith v. Aegon Companies Pension Plan. As the clerk indicated, I have exceeded 5 minutes of my time in the Department of Labor. I would also like to reserve 3 minutes of rebuttal should the court so please. Again, we've already been through the facts here. But what this case is, this is what I would call a placeholder case. Following Judge McKinley's decision where he did not allow us to amend and he dismissed the case and said we named the wrong defendant, we said fine. Let's make sure we have everybody here at the table that needs to be here at the table. We turned and filed a separate lawsuit against Aegon's pension plan, the pension entity, the ERISA plan. No qualms about that. When the first appeal, then this one we don't have to rule it, right? Interesting question, your honor. Well, if you're back in the state court against the Commonwealth General, I don't see that you need to file a suit against Aegon. From that standpoint, if that's the issue, I think what we may have is a standing and ripeness issue whether or not this one would be properly before the court then. I think that would be a fair statement. I don't understand what you're saying. In other words, would this issue be ripe, necessarily, if we're remanded on the contract because we assert that his claims ultimately are against Commonwealth General as a party to the severance agreement, the contract, and that the pension plan is simply the funding mechanism. If the pension plan overpaid him, the issues between them and the pension plan, so arguably Commonwealth General should counterclaim, I guess, or vice versa against the pension plan. If we rule in your favor in the first case, that means that the court should not have allowed the removal. It should be remanded to the state court. And you don't have Aegon in the case at all. Or we could reverse because you weren't allowed to amend. And that's a different issue. But either way, this second case doesn't amount to a hill of beans unless you lose the first case. Maybe. Maybe, Your Honor. I know that's a really specific answer. The issue on this particular one is, again, procedural. Purely procedural. We're dealing with a venue provision. Again, as we indicated earlier in the facts, 11 years... I only get that if we've got ERISA involved and if ERISA's involved, then remand would not be appropriate. But ERISA isn't involved, then remand, then the jurisdictional question would be resolved in your favor. Here's why. Why are we worrying about this venue problem? The only way I can see that we are, Your Honor, with due respect, is in the first case Mr. Smith versus Commonwealth General. Commonwealth General in their motion to dismiss raised the issue of venue in the motion to dismiss. And Judge McKinley did not address it. I don't think his order even mentions it. I'd have to go back and look. But he did not rule on it. So does that mean that he denied it outright or not? I don't know. Is it an issue that's going to come back up? Are we right back here? Or are we dealing with the venue issue somewhere else? I don't know, Your Honor. But to the extent that you find ERISA does apply, then I think we're clearly here whether on a motion to amend and name the defendant which is going to be the Agon pension plan and assert ERISA claims. We're still going to be dealing with the venue issue whether now or later. You won't be dealing with venue unless Agon is in the case because you say if it shouldn't have been removed, then it's a personal issue between your client and Commonwealth General. And Commonwealth General, you say it doesn't have a thing to do with this pension plan which provides for venue in Iowa or something like that. I agree. That's the way I understand your position. Right. Here's the concern because what action the pension plan has taken here. The pension plan has said even though they were paying the non-qualified portion we shouldn't have paid you that. You owe it back to us and we're going to reduce your future monthly benefits to zero until you pay it back. So I don't know necessarily everything's completely mooted. And the venue issue that was raised, I was looking and trying to pull a record here real quick for you, Your Honor. You say it's a severance issue or it's a severance issue between your client and Commonwealth. Right. That's it. So Commonwealth would have to owe that regardless of what Agon's done. I understand Your Honor. Agon's not even in the ballpark according to your position. Right. But the problem is that the pension plan has taken, they didn't just say we shouldn't have paid you that. You owe us back the $150,000. They elected self-help and they took his vested pension plan benefit which they cannot deny that he's owed. And they took it away from them. So you should have filed suit against Agon from the start besides Sue and Commonwealth. Right. Not necessarily. I disagree. But if you're saying... Because what we don't want to do is get, I'm sorry Your Honor, I'm not trying to, my client is not trying to double dip here. And that's why we structured it the way we did. But based on your response to Judge Seiler, I'm trying to figure out how you can at the same time be claiming that this is simply not related to an ERISA plan. Well, because we have two different things going on. What happened was Commonwealth General, as Judge Clay alluded to earlier, they entered into the agreement with Mr. Smith, you stay through this period of time, we're going to give you this additional benefit. That was the contractual element and he complied with that, he relied on that, and now they've taken it away. But Commonwealth General didn't take... But they didn't say anything in that deal, did they? What's that? That contract between Mr. Smith and Commonwealth didn't say, at least I couldn't find anybody arguing that it did, that Mr. Smith had some say in how this money was going to be paid to him from whence, whether it was going to be part of the plan. Indeed, there certainly is evidence that it would be part of an ERISA plan. So if the deal between Smith and Commonwealth doesn't preclude its being part of a plan, I'm still trying to figure out how everything you're claiming isn't related to a plan in as much as that is where the money did come from. Well, related to is an affirmative defense, the analysis on that type of preemption. Complete preemption is where it was occupied the field. That's certainly true. And so from that standpoint, they would have to raise, arguably, Commonwealth General, if they ever filed an answer in the original case, they could raise it as an affirmative defense. We think ERISA preempts these claims as it relates to. That hasn't happened yet. With respect to the issue, though, at heart, when you say relates to, the only way it relates to is they wrote the check. That's it. And just because Commonwealth General chose to fund it with their pension plan versus buying an annuity versus just writing it out of their savings account or checking account, business account every month, does not convert it necessarily into an ERISA claim. There's no, in order for the plan to be at stake here, as far as, you know, the Smith want, for lack of a better phrase. In order for, may I continue? Briefly. In order for it to be there, we have to have some analysis of the pension plan go on, and that's not going to occur. He agreed to stay on for a period of time for specific paid money, and they've taken that away from him. And so he's just trying to seek relief. Thank you. Good morning, Your Honors. I'm Stacy Elias, and on behalf of AMICUS, the Secretary of Labor, I am here to address two issues. The first is that Mr. Smith did indeed bring his federal ERISA claims in a form that is enumerated in the ERISA venue statute, which is 502E2. The second issue is that the form selection clause in this case is inconsistent with the provisions of the ERISA statute, and therefore may not be enforced. Congress intended that ERISA's venue provision be very broad in order to make it easier for ERISA participants and beneficiaries to bring claims, and in order to remove jurisdictional and procedural obstacles when participants and beneficiaries are bringing their claims. They could have made it a whole lot clearer, couldn't they? In many ways, ERISA could have been a whole lot clearer, Your Honor, and the Secretary of Labor is just doing his best to help everybody sort it out. The very beginning of the statute, Section 2, states that, among other things, ERISA is intended to protect the interests of participants and beneficiaries by providing them ready access to the federal courts. Mr. Smith filed his claims where the breach occurred, which is permitted under the venue provision. The breach occurs in an ERISA claim where the benefits are to be paid, and in this case, that is Louisville, Kentucky. You don't agree with Mr. Smith that this isn't an ERISA case. You're just saying that the form selection clause shouldn't be enforced because there shouldn't be such a thing in an ERISA claim. That is absolutely correct, Your Honor. The Secretary was not asked to give an opinion in Smith 1, I think is what they're calling it. So you can stew ERISA under contract principles, and under contract principles, a breach of contract almost always occurs where the contract is to be performed, and the ERISA cases have decided that in a claim for benefits, that is the place where the benefits are to be received, which is usually where your participant or your beneficiary resides, and in this case, Louisville, Kentucky. It's obviously that he could file it there except for the form selection clause. If the form selection clause is valid, then it's applicable. If it's not, then it should stay in Kentucky. Absolutely, Your Honor, but the way the Secretary reads the briefing in this case, the AGON is actually saying that the venue selected by Mr. Smith was not appropriate under ERISA, and the Secretary vehemently disagrees with that. What are you saying about the form selection clause, that that doesn't have to be taken into account, or is it a problem that the form selection clause wasn't entered into when the contract was entered into in the year 2000, or what would you say about all that? Well, I'm saying, on behalf of the Secretary, I'm saying all three, I heard three of those things, all three of those things, Your Honor. The first is that the form selection clause is contrary to a specific provision of ERISA, and that provision is the broad venue statute, and under Section 404A1D of ERISA, if there is a conflict between plan provisions and the plan, I'm sorry, between plan provisions and the statute, the plan provisions must yield, and in this case, to not allow Mr. Smith to bring his claim where he lives is to strip him of rights that are deliberately and liberally provided to him under the statute by Congress, and because the venue provision is in direct conflict with the plan provision for the form selection clause, the plan must yield to ERISA. And to answer the second part of your question, Your Honor, there are cases out there, and the Secretary is very concerned about the number of large employers who are now adopting these form selection clauses and the courts who are enforcing those, the district courts, no court of appeals. District court cases all over the world and nothing out of a circuit court, right? Nothing out of a circuit court, Your Honor. That is absolutely correct. And the problem is that a lot of those cases rely on the logic that somehow these are negotiated provisions of contract principles and you have two parties and they're negotiating, but these... Why is the Secretary not concerned if, in fact, the Secretary's view is that you can't have form selection clauses in ERISA plans? Why is the Secretary not concerned about plans which are huge, let's just say you can find them to national, that you're going to have a situation in which you're going to be negotiating all over the place with potentially different results within the very same plan? Because there are two countervailing interests here, and yes, ERISA does provide a certain level of consistency, but on the other hand, you have employers who are employing ordinary people all over the country, and the problem is that if you're going to weigh the interests for whom it is easier to make the trip, to transfer the evidence, to do all of this, of course it's easier for the corporation with the money and the resources and the lawyers. I mean, they have to be more familiar with the law in every jurisdiction than the employee who is, in many cases, one of your most vulnerable members of your working society. They're somebody who has experienced a disability or they're retired and on fixed incomes or they're widows or other dependents. These are your claims, who are seeking their claims to be enforced, and Congress has weighed these two countervailing interests throughout the ERISA statute, and in this particular case found in favor of the participants and beneficiaries, as we see through the venue provision. I see my time is up. Are there any other questions I can answer for the  May it please the Court. My name is still David Levin, and I represent the Aegon Pension Plan. First, this second case is really an alternative mechanism for an attempt to collect the money in the first case, and alternative mechanisms to deal with the question that Judge Batchelder asked. Alternative mechanisms are completely a form of complete preemption. It is not conflict preemption, and therefore there was a basis for removal. And may I say that all of the statements that I made actually are in the record below. The record in the first case was one that dealt with a motion to remand, and the Court was presented with numerous documents. And in fact, in addition to that, the plan and the claims and the appeal denial were all part of the record and are appropriately part of the record in the case below. In this case, what's presented really, in the first instance, the Secretary argues about where the breach occurred. This is also an issue that was not presented to the District Court. It was not argued in the District Court as to where the breach occurred. May I say that Didn't say that in the complaint or anything? There is no allegation of breach of fiduciary duty, which is what the breach is about. In the complaint, the only breach that is alleged is a breach of the contract. In other words, a breach of the obligation to pay employee benefits. That is not, under ERISA, that is not a breach of fiduciary duty. May I say that in real... Just a minute now. You started off saying there was nothing below about where the breach occurred, and then you switched to which there is, and then you switched over to saying there's nothing about where the breach occurred if it was a fiduciary breach, which is something different. You're just meshing all this stuff together in a very confusing way. Pardon me, I did not mean to be confusing. The breach that's addressed in Section 502E2 of ERISA is a breach of fiduciary duty. Yeah, but that assumes that this is an ERISA mess. The breach that is being claimed is a breach of the commitment to pay. That's correct, Your Honor. That is a breach that's remediable under Section 502A1, which does not use the word breach. It is the provision for collecting benefits. If it is, in fact, under ERISA. That's right, Your Honor. If it is, in fact, under ERISA. But this second case was filed claiming there was jurisdiction under ERISA. That's right, Your Honor. And there is jurisdiction under ERISA with respect to a benefits claim. 502A1 of ERISA provides a right for clarification of benefits, benefit rights, to enforce benefit rights, or to receive benefits. All of those claims are found under ERISA Section 502A1. They are not claims of jurisdiction. The forum selection clause that's at issue here is one that says that any litigation in connection with the plan must be filed in Cedar Rapids, Iowa, which the court below found is where the plan is administered, where the plan can be found, and where the plan resides. But it's not where the claimant resides. It is not where the claimant resides, and there is no provision in ERISA that says that the venue is where the plaintiff resides. There are statutes that say that, but ERISA is not such a statute. When you changed, when your client changed the forum selection clause, I think in 2007, it did not provide any notice to Mr. Smith that it was doing that at that time, did it? I don't know, Your Honor, whether or not he was provided with it. I cannot say. There's nothing in the record that indicates that he was provided with it. I know that he was provided with the notice of the venue provision long before he brought the lawsuit, but I don't know whether he was or he wasn't. I can't find anything in the record that suggests he was notified. There's a requirement to provide what's called the summary of material modification. It wasn't an issue below. It's an ERISA requirement to provide. There's no allegation that there wasn't one provided, but I simply don't know whether he wasn't. What I do know is that long before he brought his lawsuit, he knew about the forum selection clause. But by then, it had been changed several years ago and you wouldn't expect an individual to run out and incur the expense of a lawsuit only about the forum selection clause that had already been changed. Well, Your Honor, that would be if there were any basis for such a lawsuit. First of all, the question of amending a plan isn't a fiduciary issue. It is a set law issue. That's what this Court has found. That's what the United States Supreme Court has found for different times. There is no requirement. The plan has an amendment provision. The plan has always had an amendment provision. The amendment provision says that the plan can be amended at any time, prospectively or retroactively, so long as it doesn't reduce accrued benefits. That's actually in the plan, and the plan is a part of the record. It's in Sections 11.1 and 11.2 of ERISA, and the courts, as well as ERISA, prohibit the... So really, your client could have changed the venue in the plan to Anchorage, Alaska, not told Mr. Smith anything about it, and that would have been perfectly legal. Well, actually, I don't think so, Your Honor. The notion of amending the plan to put in a provision where to require a lawsuit, where the plan is administered, which is permissible under ERISA, or where the plan resides, which is also permissible under ERISA. The fact pattern that you've presented would actually be to select a forum selection that would be inconsistent with the statute, because it wouldn't be where the plan resides and it's not where the plan administers. This forum selection is consistent with ERISA, because it is where the plan resides, it's where the plan is administered, and it's where the plan is found. And not only that, all the benefits that are at issue here have always been paid from that plan. There is no record, anything in the record, that there were two checks or money coming from an excess benefit plan. There isn't anything, but even if there were, Agon actually does have an excess benefit plan, and it does pay benefits from the excess benefit plan, but that's not an issue in this case. What's at issue here, and when you said that about Anchorage-Alaska, is such a provision, just like one that said, go to France. That would be inconsistent with the statute, because ERISA says where the plan is administered is appropriate, is a proper venue. It's kind of unfair to claim it, though, isn't it? If he's worked all his life in Kentucky and he has to not only see a lawyer in Kentucky, but he's got to find one in Iowa, I suppose. When you say, is it fair to this particular participant, first of all, if you will, I can't say, first of all, these are benefits cases, they're decided on a closed record, generally nobody has to go anywhere. It's a motion, I've been doing this for 35 years, and it's a motions practice. Rarely is there actually where you have to go to court. But separate and apart from that, if you will, Your Honor, the question becomes one of fairness to all the participants. The question is, if you will, two issues. It's the use of the plan's money to pony around to different courts all over the country, which reduces, if you will, if the employer's paying for the expenses, although it could come from the plan, it's money that couldn't then go towards benefits. And on top of that, when you talk about fairness to a participant, the point that Judge Batchelder made about inconsistent opinions, we in fact, I asked, my client filed a motion with this court and with this court in both cases, to ask that it be heard by the same panel. Why? Because we didn't want inconsistent decisions. The courts that have looked at the issue about forum selection clauses have recognized that it does advance ERISA's purposes, because what you end up with is one court making rulings consistently about the plan. The court gains a familiarity, the plan can be amended to correct any problems, because you've got the same court looking at it over and over again. That consistency is really an important aspect. In fact, all of the ERISA preemption provision is in order to create consistency, so you don't have all these different courts all over the place doing otherwise. I'd like to address, if I may, to address what I think are significant points for you to consider in connection with this. Is that, is he bound by the contract, because it was the venue provision, because it came in 2007 and he retired in 2000? The law in this jurisdiction and not just in this jurisdiction, but we're here, is that he is bound. Amendments to plans after individuals begin getting benefits are honored as long as they don't reduce accrued benefits. The first case I could find like it was Wolf v. Quantum Chemical Corporation. I didn't cite it in my papers. It's 26, Fed 3rd, 1368, where this court found that a retroactive plan amendment after the individual had ceased, it was co-participant, but it ceased employment, was valid as long as it didn't reduce his benefit. One of the most famous cases in the United States comes from this court, Sprague v. General Motors. The individuals had already, it was a welfare benefit plan, but in this jurisdiction, this rule applies to welfare benefit plans and pension plans under Coomer v. Bethesda. Those individuals, the amendment was made after they'd retired, after they'd finished working, and the change was one that affected them. This court upheld the amendment. In Musto v. American General, the court did the same, and in an opinion unpublished, but written by Judge Cook, in which you, Judge Seiler, and you, Judge Batchelder, were on the panel, Grimala v. Royal and Sun Alliance, that case relied on the Wolf decision to say that amendments that are made to plans after individuals terminate employment, but are still participants, are valid as long as they do not reduce accrued benefits, and this one didn't. And I say this to you because I think in terms of the jurisprudence, the precedent within the circuit, it's important for you to realize that to rule otherwise would be to change it. In addition, if you will, in Landis v. Pinnacle I, an opinion you, Judge Seiler, wrote, ruling by the Sixth Circuit, this court held that a form selection clause does not limit, reduce, or eliminate substantive rights. Those substantive rights were statutory, they were the rights of an individual on the Uniform Services, Employment, and Reemployment Act, what we call USERRA. And that's what this court ruled, and that court's ruling was consistent with the decisions of the Supreme Court in Gilmer v. Interstate Johnson, where it was found that a form selection clause didn't take away any substantive rights. There it was the age discrimination, it was the ADEA that was at issue. This court had earlier ruled in Roney v. Goren, in a case involving the 34 Exchange Act, that form selection clauses do not take away substantive rights. This court actually ruled in Simon v. Pfizer, that a form selection clause, one that dealt with arbitration, but still, that is the Supreme Court says, this is a form selection clause, that did not destroy or take away anyone's substantive rights. So for the court now to rule that this affects a substantive right of the Supreme Court, it's very consistent with all of that precedent. And I ask of you something, and that is, if you were to rule in my client's favor, question comes, could you, I say this, could you remand and tell the court to transfer? That issue was actually, if you will, in the Supreme Court case that was filed here, Atlantic Marine, the issue there that was presented to the court was 12b-3, the way to deal with a form selection clause. You all years ago concluded 12b-3 wasn't the way to deal with a form selection clause. The Sixth Circuit rules that the way to deal with a form selection clause is a choice of two, either 12b-6 or 14-04. And in fact, in the case Langley v. Prudential Mortgage Capital, 546 Fed Third 365, and it's a procurium opinion, this court actually said the way you deal with form selection clauses is 14-04 or 12b-6, and the court remanded and told the defendant to file a proper motion. Judge Moore of this court wrote a concurrence to emphasize that it is the party that wants to enforce the plaintiff's choice as to how to do it. We chose. We chose 12b-6 to dismiss. And so, if you were to find, and I hope that you do find, and I've run out of time, in my client's favor, I hope that you'll recognize that the choice was ours how to do it. The choice was not the plaintiff's. And I thank you. If you have any questions, I'm happy to answer them. If not... We do not. Thank you very much. Thank you, Your Honor. I want to touch on, quickly, four points and then kind of flush those a bit. I think the issue here, when we look at Smith v. Agon pension plan, I think there's been a mincing of words here, as Judge Clay alluded to. We're not talking about a forum selection clause here. We're talking about venue. We're not talking about whether or not they agreed to forego bringing an in federal court versus arbitration. We're talking about where it can be brought. That's the issue. Venue, not forum. Now, with respect to whether or not venue is appropriate, where a beneficiary, where a participant resides, worked, and received their benefits, that establishes law. Is there a difference between appropriate and mandatory? May versus shall? I think it's a distinction without... The ERISA venue provision says where an action under the subjector is brought in a district court, it may be brought and then it gives three places. Right. And the whole idea behind the policy alluded to in ERISA is a lot of these benefit claims, many of them are very small. It's going to be very difficult to find counsel, let alone if you want to do pro se, I suppose, with some of these claims if you have to take it all the way to, I think, I don't remember which Justice said, Alaska. Why not Guam? That's a territory of the U.S. But you're going way afield. I understand. I asked, which was, if the statute has alternatives and they're permissive, how do we get to the idea that there's only one proper venue? The statute would have said that. It would have said, you can only bring it here. It was written broadly to allow the policy of ready access to the courts. That is stated in the statute itself, not just in the preamble. It is a requirement of ERISA that we allow participants and beneficiaries to seek relief wherever the plan can be found, wherever it was administered, wherever they received benefits. That's true about ordinary cases, other kind of federal claims, you know. It's where the cause of action arose or where you find the defendant. But you can have form selection clauses in contracts, right, for other situations. Absolutely. Form selection, venue, though, I think we have to be cautious here. When you get on a Carnival Cruise, you've got to sue them in a special place. There's a difference between Carnival Cruise and here. Carnival Cruise, when they bought the ticket, if they flipped it over on the back, they would have read it. Plus, it's warmer on a Carnival Cruise than here. Unless you're back in Portland sick. But anyway, with respect to that, they knew ahead of time. This was done seven years after he left. Now, what was left out of Defendant Pelley's argument is this. On one hand, they want to argue that the VERP, the severance agreement, is ERISA. Well, if that's the case, then it's going to control here as well. And in his release, it specifically says, the parties who did agree to this one, they say, I consent to the exclusive jurisdictions of courts, federal and state, located in Kentucky with respect to all matters relating to this waiver and release and the matters referred to in this waiver and release. What did it address? It addressed the benefit payments they were going to make that are at issue here. So they can't have it both ways. They can't say ERISA applies and then ignore this actual venue and forum selection clause. That is at page ID 323. I need to ask each of you, both of you, whatever, has there been any effort to resolve this mess through mediation? Your Honor, yes. We participated with the teleconference with the Sixth Circuit Mediation Office. I don't remember the exact date. Mr. Levin may remember offhand. But yes, we did attempt. Unfortunately, we weren't able to reach a resolution. And are you satisfied now, after having heard all the various questions from the bench, that there would be no future in making another stab at mediation? Because if you don't, somebody's going to win and somebody's going to lose. Correct. Your Honor, with a straight face, I'm never going to tell a judge that asked me that question that no. We will always be amicable and attempt a resolution. And usually that goes on. Well, I'm not just talking about amicable. I'm saying is there any reason to think you might actually be able to get somewhere with a renewed effort at mediation? Because if there is, this court will contact the mediator and ask the Mediation Office to contact you. If there isn't, then obviously there's no point in that. Well, with all due respect, I don't have authority here today to answer that yes or no. I would want to confer with the client. Do you have any objection to our asking the Mediation Office to contact you? Mr. Levin. Your Honor, if you will, I as well don't have I would always talk to the client first about any question of mediation. Either way, whether it's the office contacting us or so we could send I don't know your process, whether we could send letters and say whether that we wanted or didn't want. Also, Mr. Grafman and I could talk next week once we had a chance to talk to our clients. And then let the Mediation Office know. The usual approach here is that we would contact the Mediation Office. The Mediation Office would contact you and then you could decide whether and if so how to proceed. Your Honor, that would be that's fine with me. I tell you the last time I talked to the client it was not some kind of recognizing what can happen here. But I think it's only an ethical obligation to present it to the client. Well, sure. But beyond that, I understand that once you've made a crack at the process, it may be that there's just no way in the world. On the other hand, I have to tell you that it wouldn't be a first for the Mediation Office in that situation to discover that, in fact, there were some avenues that were productively pursued. I would certainly appreciate it. And the effort, I would ask also that this not be a protracted process. And so would we. It's going to be, we should know probably next weekend. If it's not going to be, I'm sure we'll know that as well. Well, if it's as simple as both of you say that it's a matter of math and looking at the contract, I'd think you could resolve it pretty easily. But I haven't gone through those steps. If you will, it becomes a little more difficult in connection with the employability plan with respect to qualification issues. If you overpay benefits under a plan, the Internal Revenue Service says it has a procedure under employee plans. But I understand that, sure. And the requirement is you go and you've got to deal with it and they don't certify. Third Party Service doesn't really like settlements a lot. But we would certainly know within by the beginning of the week. I will ask the mediator to contact you. And with the understanding that I am simply saying if there's any reason to think that working with the mediator would be useful, fine. Set it up with him. Not now, nor is there ever any pressure from this Court to do that. And I want to make that clear. Fully understood, Your Honor. Thank you. The case will be submitted. Nothing further this morning. You may adjourn the Court.